**Kevin Lee EATON, Ann Louise Eaton, Plaintiffs/Appellees,**

v.

**FIRST AMERICAN BANK OF VIRGINIA, Defendant/Appellant.**

Civ. A. No. 91–103–NN.

United States District Court,
E.D.Virginia,
Newport News Division.

Dec. 11, 1991.

Richard Wilson Hudgins, Newport News, Va., for plaintiffs/appellees.

Carl A. Eason, Wolcott, Rivers, Wheary, Basnight & Kelly, Virginia Beach, Va., for defendant/appellant.

## OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

Appellant First American Bank of Virginia (the "Bank"), a creditor of the appellees/debtors Kevin and Ann Eaton (the "Eatons"), appeals from the final order of the United States Bankruptcy Court, Eastern District of Virginia, Newport News Division, entered June 24, 1991. Pursuant to 28 U.S.C. § 158(a), the court has jurisdiction to hear the Bank's appeal.

The Eatons wish to retain their 1987 Dodge Colt Vista Station Wagon after filing for bankruptcy relief under Chapter 7 of the Bankruptcy Code (the "Code"), 11 U.S.C. §§ 701–766, on December 21, 1990. Rather than continuing their installment payments to the Bank pursuant to the original security agreement and lien, the Eatons utilized 11 U.S.C. § 506 to strip down the lien amount to the fair market value of the car. Now, instead of paying off the stripped-down lien in a lump sum, they contend that the Bank must continue to extend them credit to permit them to pay the stripped-down lien amount on an installment basis.

The Bank characterizes the debtor's action as a redemption under 11 U.S.C. § 722. It contends that if the Eatons choose to retain their car after filing for relief under Chapter 7, they must do so pursuant to section 722 of the Code by making a lump-sum payment to the Bank of the car's fair market value. In a Chapter 7 case, the Bank argues, the Eatons cannot force the Bank, over its objections, to accept redemption on an installment basis. However, the bankruptcy court ruled that the Eatons could retain their car by continuing installment payments to the Bank, even after stripping down the lien amount to the fair market value of the car under section 506 of the Code. For the reasons stated below, the court agrees with the Bank's position and REVERSES the order of the bankruptcy court entered June 24, 1991.

## I.

The Bank filed a proof of claim reflecting a lien on the car to secure the debt of the Eatons in the amount of $6,384.85. On March 20, 1991, after filing a Statement of Intention with their bankruptcy petition to redeem their car, the Eatons commenced an adversary proceeding to determine the nature and extent of the Bank's lien on the car. On April 19, 1991, counsel for both parties stipulated the fair market value of the car to be $4,600. Despite this stipulation, the bankruptcy court conducted a hearing on May 24, 1991, to determine the value of the lien under section 506. However, at the May 24 hearing, the bankruptcy court went further and concluded that the Code did not require the Eatons to pay off the fair market value of their car in a lump-sum payment because section 506 "rises higher" than reaffirmation under section 524(c) or redemption under section 722. *See* Transcript of Proceedings, *Eaton v. First Am. Bank,* No. 90–42132–B, at 11 (Bankr.E.D.Va. May 24, 1991) (hereinafter referred to as "Tr.").[1]

1. At the hearing on May 24, 1991, the Eatons moved to amend their Statement of Intention to correctly reflect that they do not seek a redemption, but instead wish to "retain an exemption." Tr. at 3. The Bank objected and the bankruptcy court denied the Eatons' motion to amend the Statement as untimely, but heard the Eatons' motion to determine the nature and extent of the lien. Tr. at 5. In the order entered June 24, 1991, however, the bankruptcy court overruled the Bank's objection to the Eatons' amended Statement of Intention. Neither the original nor the amended Statement of Intention is a part of the record on appeal.

2. *See Riggs Nat'l Bank v. Perry,* 729 F.2d 982, 986 (4th Cir.1984) (absent default, debtor not required to redeem or reaffirm as a condition to maintaining possession of collateral before discharge in bankruptcy is either granted or denied); *In re Belanger,* 118 B.R. 368, 369 (Bankr. E.D.N.C.1990) (applied to mobile home); *In re Crouch,* 104 B.R. 770, 772 (Bankr.S.D.W.Va. 1989) (applied to car); *First and Merchants Nat'l Bank v. Ballance (In re Ballance),* 33 B.R. 89, 91 (Bankr.E.D.Va.1983) (applied to car).

3. Section 722 provides:

    An individual debtor may . . . redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522

The issue, then, is whether the Eatons can retain their car by continuing installment payments to the Bank after a section 506 value determination, rather than making a lump-sum payment for a section 722 redemption.

## II.

A debtor in a Chapter 7 bankruptcy has several ways to lawfully retain possession of secured collateral, none of which resembles what the Eatons propose. The debtor may continue to make installment payments pursuant to the security agreement, as long as the debtor has not yet defaulted,[2] or the debtor may pay off the entire debt. The debtor also may reaffirm the obligation by renegotiating the terms of the security agreement with the creditor for retention of the collateral while the debtor pays the debt over a period of time. *See* 11 U.S.C. § 524(c). Lastly, in limited circumstances, the debtor may redeem tangible secured personal property by paying the creditor the fair market value of the property, or the amount of the claim, whichever is less. *See* 11 U.S.C. § 722.[3]

of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

11 U.S.C. § 722 (1979).

The "allowed secured claim" under § 722 is then determined by reference to § 506, which provides:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

. . . .

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void [with exceptions not applicable here].

11 U.S.C. § 506 (1979 & Supp.1991).

The Bank has not appealed the bankruptcy court's strip-down of the lien under § 506. In fact, both parties stipulated to the value of the car. *See supra* at 178–79. Moreover, neither

However, the courts have specifically held that a debtor who wishes to redeem property pursuant to section 722 must do so by making a lump-sum payment to the creditor and that redemption by installments is improper. *See, e.g., Valley Nat'l Bank v. Avila (In re Avila)*, 83 B.R. 6, 7 (Bankr. 9th Cir.1987) (allowing debtors to retain their car by making monthly payments up to car's fair market value amounted to an improper redemption by installments); *Ford Motor Credit Co. v. Polk (In re Polk)*, 76 B.R. 148, 150 (Bankr. 9th Cir. 1987) (creditor not required to accept monthly payments in satisfaction of its secured claim at the fair market value of debtor's car because "Code provisions for a Chapter 7 debtor require that redemptions be made in lump sums"); *see also General Motors Acceptance Corp. v. Bell (In re Bell)*, 700 F.2d 1053, 1055–57 (6th Cir.1983) (collecting cases denying installment redemption).[4]

The Eatons wish to retain their car, but have followed none of these available procedures. The Eatons declined to continue making payments under the original security agreement and refused or were unable to pay off the entire debt. They also failed to persuade the Bank to extend their credit under a reaffirmation plan. Despite their earlier Statement of Intention to redeem, the Eatons also persist in claiming that they have not and do not request redemption under section 722.[5] The Eatons wish to bypass this redemption step so that they can avoid making a lump-sum payment. Instead, they propose an alternate method to retain possession of their car; that is, section 506 of the Code permits them to strip down their lien to its fair market value and then continue making installment payments. No statutory authority or case law supports their position.

### III.

In conclusion, Chapter 7 contemplates *liquidation* of the bankrupt estate. Thus, if the Eatons wanted to keep their car by making installment payments, they should have filed for reorganization under Chapter 13. As the court reasoned in *Lindsey v. Federal Land Bank (In re Lindsey)*, 823 F.2d 189, 191 (7th Cir.1987), a case involving a strip-down of a real estate lien under section 506 in a Chapter 7 bankruptcy:[6]

[The debtors] chose to proceed under Chapter 7 of the Bankruptcy Code, which

---

party contests the applicability of § 722 to the Eatons' car. The Eatons argue only that they did not choose to utilize § 722 to retain possession of their car. *See supra* note 1.

**4.** In the proceedings below, the bankruptcy court acknowledged this result as the majority view. *See* Tr. at 10. In addition, applying § 506(a) and (d) in the Chapter 7 context to real estate, some courts have permitted the debtor to avoid a secured creditor's lien to the extent that the lien exceeded the fair market value of the real estate. *See, e.g., Gaglia v. First Fed. Savs. & Loan Ass'n*, 889 F.2d 1304, 1308 (3d Cir.1989) (applied to debtor's residence); *Lindsey v. Federal Land Bank (In re Lindsey)*, 823 F.2d 189, 190 (7th Cir.1987) (applied to debtor's farm). *But see, e.g., Dewsnup v. Timm (In re Dewsnup)*, 908 F.2d 588, 592 (10th Cir.1990) (debtors in Chapter 7 case could not void the undersecured portion of lien on real property that bankruptcy estate abandoned and redeem property by paying to secured creditors fair market value of property), *cert. granted*, — U.S. ——, 111 S.Ct. 949, 112 L.Ed.2d 1038 (1991); *In re Shrum*, 98 B.R. 995, 1002 (Bankr.W.D.Ok.1989) (debtor could not use § 506(b) in a Chapter 7 case to strip down a lien because that section does not apply to property that the debtor will retain

through abandonment or exemption). However, these courts permitting a real estate lien strip-down under § 506 either required the debtor to redeem the collateral, by paying the fair market value of the stripped-down lien, or permitted the creditor to foreclose on the property. *E.g., Gaglia*, 889 F.2d at 1308 ("The [creditor] may foreclose on the property to realize the value of its secured claim."); *Lindsey*, 823 F.2d at 191 ("Section 506 gives [the creditor] a secured interest *that he can foreclose on* equal to the market value of his interest...."); *In re Zobenica*, 109 B.R. 814, 821 (Bankr.W.D.Tenn. 1990) (debtors to pay cash for the liquidation value after strip-down). As stated, these cases addressed the strip-down of real estate liens, not liens for personal property covered by § 722. Whether this court agrees with the application of § 506 to real estate in the Chapter 7 context is not before the court.

**5.** *See supra* note 1 and accompanying text.

**6.** Although the court in *Lindsey* addressed the strip-down of a lien on real estate, *see supra* note 4, this court nevertheless finds the Seventh Circuit's reasoning persuasive and applicable to personal property, such as the Eatons' car, that is covered specifically under § 722.

contemplates the liquidation of the bankrupt estate.... [L]iquidation of the estate means sale of the real estate.... If the [debtors] wanted to hold on to their property they should have sought reorganization under Chapter 13....

It would be absurd to think that Chapter 7 could be used, as the [debtors] would use it, just to reduce the amount due on a mortgage. Then in any period of depressed real estate values, when a farmer's liabilities exceeded his assets, he could get the liabilities reduced simply by declaring bankruptcy.

The same reasoning applies to the Eatons' case. The Eatons have obtained the benefit of a strip-down under section 506 in a Chapter 7 bankruptcy, thereby affording them a new balance due on their car of $4,600, significantly less than their original debt of $6,384.85. They cannot have the advantage of a stripped-down lien amount under section 506 without the attendant requirement that they redeem the car under section 722 by making a lump-sum payment of that stripped-down lien amount.

Finally, the court also finds persuasive the Bankruptcy Appellate Panel of the Ninth Circuit's reasoning in *In re Polk*:

If debtors enjoyed the right to redeem by installments at the fair market value, few would ever elect to reaffirm secured obligations under Section 524(c) since they would likely pay a higher price. In addition, the creditor's right to reject a reaffirmation proposal would carry little weight since the debtor could alternatively pay by installments without the creditor's consent under Section 722.

76 B.R. at 150.

For the foregoing reasons, the Eatons may not make installment payments on the stripped-down lien amount of $4,600. Accordingly, the order of the bankruptcy court entered June 24, 1991, is REVERSED, and the case is REMANDED for

proceedings and judgment in accordance with this opinion and order.[7]

The Clerk is DIRECTED to send a copy of this opinion and order to all counsel of record and to the bankruptcy court.

It is so ORDERED.

---

**7.** The record below reflects some confusion about how the Eatons wish to proceed, i.e., whether they actually desire to redeem the car under § 722. *See supra* notes 1; 3, para. 3; and text accompanying note 5. Pursuant to this Opinion and Order, the Eatons may either immediately pay off the stripped-down lien

amount of $4,600 in a lump sum, or they may continue installment payments on the original debt of $6,384.85 pursuant to the security agreement, provided they are not yet in default. Otherwise, the Bank is entitled to foreclose on its lien and repossess the car.