**In re Jerry Garland EVATT and Carol June Evatt, Debtors.**

**UNITED STATES of America, for FARMERS HOME ADMINISTRATION, Appellants,**

**v.**

**Jerry Garland EVATT, Debtor Charles Underwood, on Behalf of Chapter 12 Debtors Similarly Situated, Jack Cornelius, Chapter 12 Trustee, Appellees.**

**Bankruptcy No. Bk. 88–4446 TS.**

**No. CIV 89–1131–R.**

United States District Court,
W.D. Oklahoma.

March 8, 1990.

Herbert M. Graves, Joel W. Harmon, Susan Dennehy Conrad, Sullivan, Graves & Densmore, Oklahoma City, Okl., for debtors.

Kay D. Sewell, Asst. U.S. Atty., Oklahoma City, Okl., for FmHA.

W. Rogers Abbott, II, Abbott & Gordon, Oklahoma City, Okl., for trustee.

Charles R. Underwood, Rick Poland, Oklahoma City, Okl., amicus brief, on behalf of other chapter 12 debtors similarly situated.

## MEMORANDUM OPINION AND ORDER

DAVID L. RUSSELL, District Judge.

The United States of America, for Farmers Home Administration (FmHA), appeals from an Order of the bankruptcy court denying FmHA's motion for relief from the automatic stay to set-off amounts owed by the Commodity Credit Corporation (CCC) under five Agricultural Stabilization and Conservation Service (ASCS) contracts with the Debtor[1] against the amount the Debt-

---

1. Debtor Jerry Garland Evatt is the only signatory to the ASCS/CCC contracts.

ors owed to the FmHA on a promissory note, 112 B.R. 405. The FmHA does not appeal the denial of offset with respect to one of the five contracts, a ten-year contract dated February 26, 1987, referred to as Agreement 2 in the bankruptcy court's Order of January 27, 1989.[2]

Although stated somewhat differently by Appellant, this appeal really raises three issues:

1) Are the four contracts in question executory contracts?

2) Are the debts potentially owed to the Debtor pursuant to those contracts debts that arose pre-petition?

3) Does a change in capacity of the pre-petition Debtor to a post petition Debtor-in-Possession destroy the mutuality of obligation necessary to set-off under 11 U.S.C. § 553?

The bankruptcy court answered the first and third of the foregoing questions in the affirmative and the second in the negative. Appellant assigns error to all three answers.

Appellant argues that the contracts were not executory because after the Debtor entered into them in March of 1988, the Debtor had no affirmative duties under them except to file timely a Form ASCS–578, which Appellant asserts was done prior to the filing of Debtor's bankruptcy petition on July 11, 1988.[3] Appellant in effect argues that as of the date the bankruptcy petition was filed, the contracts were executed, with payment being the only remaining thing to be done under each contract. Appellant implies that under the contracts, the right to receive payments was fixed as of the time the bankruptcy petition was filed but that the amounts of such payments—which are tied to the price of the particular crops covered by the contracts for the 1988 year—would not be ascertainable under October and December of 1988, when the actual cash payments were due to be made.

The bankruptcy court found that the contracts in question required that the Debtor limit the acreage planted with crops, devote acreage to approved conservation uses, protect designated land from weeds, insects, rodents, and wind and water erosion by using certain approved covers or conservation practices through December 31, 1988, and not allow grazing or mechanical harvesting on the designated land. Debtor must also file a specified form listing all crops and land uses on the farm. As of the date the bankruptcy petition was filed, approximately six months' performance had been rendered under these contracts, and approximately six months remained in which Debtor was bound to comply with the terms of these contracts.

Full compliance with the requirements of these contracts will entitle Debtor to deficiency and/or diversion payments as computed and announced by the CCC. Upon Debtor's failure to comply with the terms and conditions of the contract, CCC has the right to declare him ineligible for any benefits under the contract, may require a refund of any advance or final payment, and may require payment of liquidated damages.

Order Denying in Part and Granting in Part Setoff of Entitlement Payments at pp. 22–3.

None of the foregoing findings of fact by the bankruptcy court are clearly erroneous. *See* F.R.Bankr.P. 8013; *Rowe International, Inc. v. Herd (In re Herd)*, 840 F.2d 757, 759 (10th Cir.1988); *Mullet v. First Bank of Colorado Springs (In re Mullet)*, 817 F.2d 677, 678 (10th Cir.1987); *Branding Iron Motel, Inc. v. Sandlian Equity, Inc. (In re Branding Iron Motel, Inc.)*, 798 F.2d 396, 399–400 (10th Cir.1986). Whether the bankruptcy court's application of the law to such facts to conclude that the contracts are executory, under which no rights to deficiency payments will arise until, *in-*

---

**2.** The bankruptcy court granted the motion of the FmHA with respect to a debt owed by CCC to the Debtor for an overpayment by Debtor on a sixth contract, a Farm Storage Note and Security Agreement dated August 8, 1985.

**3.** The Court finds no evidence in the record of whether or when such form was filed.

*ter alia,* substantial remaining performance is completed post-petition, *see* Order at p. 23, is subject to *de novo* review. *See Rowe International, Inc. v. Herd (In re Herd),* 840 F.2d at 759; *Mullet v. First Bank of Colorado Springs (In re Mullet),* 817 F.2d at 679; *Branding Iron Motel, Inc. v. Sandlian Equity, Inc. (In re Branding Iron Motel, Inc.),* 798 F.2d at 399–400.

A leading bankruptcy treatise, while observing that there is no specific definition of an executory contract, states:

> Generally, contracts on which material performance remains due on both sides are executory. If performance on one side is completed, the contract is no longer executory.
>
> 1 *Collier Bankruptcy Manual* ¶ 365.01 at pp. 365–2–3 (3rd ed. 1989).

A definition of an executory contract in the bankruptcy context which has been frequently quoted and followed is that set forth by Professor Vern Countryman:

> A contract under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.
>
> Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn.L.Rev. 439, 460 (1973) (hereinafter *"Countryman "*).

*See In re Pacific Express, Inc.,* 780 F.2d 1482, 1487 (9th Cir.1986); *In re Bellamah Community Development,* 107 B.R. 337, 340 Bankr.N.M.1989); *In re Clark Resources, Inc.,* 68 B.R. 358, 359 (Bankr.N.D. Okla.1986) (quoting *Countryman* ). The legislative history of Section 365 of the Bankruptcy Code, which refers to an executory contract as one "on which performance remains due to some extent on both sides," S.R. No. 989, 95th Cong., 2d Sess. 58, *reprinted in* U.S.Code Cong. & Ad. News 5787, 5844; H.R.Rep. No. 595, 95th Cong., 2d Sess. 347, *reprinted at* 1978 U.S.

Code Cong. & Ad.News 5787, 5963 & 6303, is consistent with Countryman's definition. The Tenth Circuit has described an executory contract under bankruptcy law as one in which neither party has completely performed and the obligations of each party remain "complex." *Workman v. Harrison,* 282 F.2d 693, 699 (10th Cir.1960).

Given the foregoing definitions of an executory contract, the bankruptcy court's application of the law to the facts herein was correct and his conclusion that the contracts in question were executory contracts, on which substantial performance remained to be completed post-petition, was not contrary to law. *Accord, In re Fryar,* 93 B.R. 101, 103 (Bankr.W.D.Tex.1988); *Walat Farms, Inc. v. United States ex rel. U.S. Department of Agriculture (In re Walat Farms, Inc.),* 69 B.R. 529, 531–34 (Bankr.E.D.Mich.1987) (cited by the bankruptcy court). *See also Schneider v. Caprock Industries, Inc., (In re Lions Farms, Inc.),* 54 B.R. 241, 244–45 (Bankr. D.Kan.1985), *aff'd,* 4 UCC Rep.Serv.2d 1212 (D.Kan.1987); *In re Schmidt,* 38 B.R. 380, 383 (Bankr.N.D.1984); *In re Sunberg,* 35 B.R. 777 (Bankr.S.D.Ia.1983), *aff'd,* 729 F.2d 561 (8th Cir.1984) (PIK entitlement contracts are executory contracts). It follows logically and as a matter of law from the bankruptcy court's conclusion that the contracts are executory, that ASCS/CCC is obligated to make payment only upon the debtor-in-possession's assumption of the executory contracts [4] and performance thereof post-petition, *see* 11 U.S.C. § 365; 1 Collier Bankruptcy Manual ¶ 365.01 at pp. 365–1–4, and thus that the debt of ASCS/CCC is a post-petition debt, i.e. one arising post-petition or not absolutely owed pre-petition, not subject to offset against the Debtor's pre-petition debt pursuant to 11 U.S.C. § 553. *See* 11 U.S.C. § 553; *In re Fryar,* 93 B.R. at 103–04; *Walat Farms, Inc. v. United States ex rel. U.S. Department of Agriculture (In re Walat Farms, Inc.),* 69 B.R. at 531. *Cf. Braniff*

---

**4.** Based on "[p]rovisions for the timely assumption [of] Agreements # 2–# 6 . . . . within Debtors' plan of reorganization," the bankruptcy court found that the debtor-in-possession intended to assume and complete performance of those con-

tracts. Order Denying in Part and Granting in Part Setoff of entitlement Payments at p. 11. Appellant does not challenge that finding or raise any issue concerning the timing or effectiveness of assumption of the contracts.

*Airways, Inc. v. Exxon Co., U.S.A. (In re Braniff Airways, Inc.),* 814 F.2d 1030, 1036 (5th Cir.1987) (debt which is absolutely owed at time petition was filed even though the debt was not yet "due" or the amount calculated, was a prepetition debt for set-off purposes).[5] The bankruptcy court did not err in concluding that the payments potentially owed the Debtor under the contracts are not pre-petition debts of the creditor and therefore cannot be offset against the Debtor's pre-petition debt. *See* Order Denying in Part and Granting in Part Setoff of Entitlement Payments at pp. 12, 23 & 25. *See also* Order Denying Motion to Reconsider.

The Court finds it unnecessary to reach the third issue raised by this appeal because the lack of mutuality of the debts, *see, e.g., Braniff Airways, Inc. v. Exxon Co., U.S.A. (In re Braniff Airways, Inc.),* 814 F.2d at 1036, is alone sufficient to preclude set-off.

The bankruptcy court's Order denying FmHA's motion for set-off of debts owed by the ASCS/CCC to the Debtor pursuant to "Agreements # 3–# 6," the four contracts which are the subject of this appeal, is AFFIRMED.

IT IS SO ORDERED.

---

**5.** The Court agrees with the bankruptcy court that the cases of *Moratzka v. United States Agriculture Stabilization and Conservation Service (In re Matthieson),* 63 B.R. 56 (D.Minn.1986); *Greseth v. Federal Land Bank (In re Greseth),* 78 B.R. 936 (D.Minn.1987); *Brooks Farm v. United States Department of Agriculture (In re Brooks Farms),* 70 B.R. 368 (Bankr.E.D.Wis.1987); and *In re Woloschak Farms,* 74 B.R. 261 (Bankr.N.D. Ohio 1987), *vacated on other grounds,* 109 B.R. 736 (N.D. Ohio 1989), cited by the FmHA below, are distinguishable for essentially the reasons cited by the bankruptcy court. *See* Order Denying in Part and Granting in Part Setoff of Entitlement Payments at pp. 9–12. In none of those cases did the court address the issue of whether the contract was executory where the contract gave the government the right to declare the Debtor ineligible for benefits if the Debtors failed to comply with the terms and conditions of the contract. In the case of *In re Ratliff,* 79 B.R. 930, 933 (Bankr.D.Colo.1987), cited by Appellant, the bankruptcy court merely followed the *Matthieson* case in spite of its recognition that the contracts in question were executory contracts which the debtors had to assume to obtain the benefits thereunder. The case of *In re Lundell Farms,* 86 B.R. 582 (Bankr. W.D.Wis.1988), also cited by Appellant, is distinguishable because the court therein found that "there were no material obligations left to perform other than payment" and that "every act related to setoff had been completed" at the time the bankruptcy petition was filed, and thus concluded that the contracts were not executory. 86 B.R. at 588.